**BEAL BANK, S.S.B., Appellant,**

v.

**Robert H. SCHLEIDER III, Appellee.**

**No. 14–01–00969–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 4, 2003.

Rehearing Overruled Jan. 29, 2004.

Charles A. Gall, Robert B. Gilbreath, Dallas, for appellant.

Jeff Nobles, William R Burke, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and FROST.

## OPINION ON REHEARING

JOHN S. ANDERSON, Justice.

We grant appellee's motion for rehearing, deny the requested relief, but withdraw our opinion filed January 16, 2003, and substitute this opinion in its place.

Appellant, Beal Bank, S.S.B., appeals from a judgment on the jury's verdict in favor of appellee, Robert H. Schleider III, on his claim for fraud against Beal Bank and on Beal Bank's counterclaim for the full face value of a promissory note. The judgment awarded Schleider (1) $141,933.98 in compensatory damages, offset by $46,399.35, (2) $13,181.39 in prejudgment interest, and (3) and $80,000 in exemplary damages.[1] In our original opinion of January 16, 2002, we reversed and rendered judgment Schleider take nothing on his fraud claim against Beal Bank, and that Beal Bank recover $206,695.03 plus post-judgment interest.

In his motion for rehearing, Schleider argues, among other matters, that he should recover on his alternative theory of negligent misrepresentation, for which the jury awarded $156,182.91 in past damages and $89,583.33 in future damages. Concluding the evidence is legally insufficient to support the jury's finding of negligent misrepresentation, and declining to alter our analysis of the issues addressed in our original opinion, we again render judgment Schleider take nothing against Beal Bank, and that Beal Bank recover $206,695.03 plus post-judgment interest.

## FACTUAL AND PROCEDURAL BACKGROUND

The genesis of this appeal is a promissory note executed in 1993 by Schleider and

---

1. The $46,399.35 offset comprises $35,000, which Schleider stipulated he owed Beal Bank, plus $11,399.35 in prejudgment interest on that amount. The $13,181.39 in pre-

judgment interested was calculated on the past damages found by the jury, less the $46,399.35 credit.

payable to NAB Asset Venture (NAB). The face amount of the note, designated a "Renewal and Modification Promissory Note," was $219,264.22. The note contained a discount paragraph, which provided Schleider could discharge the face amount of the note, plus interest, by paying $151,000, if he complied with a schedule calling for the final payment to be made July 1, 1998. The discount paragraph required Schleider to make monthly payments of $2,500 and gave him the right to defer up to three payments a year in exchange for a $500 fee, with the remaining deferred payments then being due July 1, 1998. On several occasions, Schleider took advantage of the deferral provision.

In September, 1995, Beal Bank purchased the note from NAB. For the next two years, Schleider made either a loan payment or paid the $500 fee to defer payments. Schleider testified he had no intention of letting the undiscounted note come due.

In December 1997, Schleider had heart surgery, was unable to work for about two months, and paid the $500 fee to defer the next three loan payments. In February 1998, Schleider applied for a $60,000 home equity loan from Wells Fargo. Wells Fargo approved the loan and gave Schleider a cashier's check for $60,000. Schleider testified he secured the loan so he could pay various debts, including the amount that would be due under the note when it matured July 1, 1998.

In early May 1998, Beal Bank sent a form letter reminding Schleider the note would mature July 1, and Schleider would be required to pay the outstanding indebtedness at that time. Beal Bank's letter requested Schleider "to communicate to this office as soon as possible your intentions with regard to full satisfaction of this debt." At the time it was Beal Bank's practice to send this type letter to every borrower with a loan maturing in the near future. The reminder letter was signed by William Dickenson, a Beal Bank loan officer who at that time had responsibility for sending form reminder letters.

After receiving the letter, Schleider called Dickenson. Schleider's phone records reflect a 30 second call to Dickenson's phone number on May 19, but Schleider did not talk with Dickenson on that date. Schleider's phone records also reflect a 2.9 minute call to Dickenson's number on May 28. Schleider was not sure whether they talked that day or in a call returned by Dickenson, but he remembered the conversation was short and believed it occurred when Schleider called Dickenson.

Schleider testified he explained to Dickenson he had obtained a home equity loan to pay off the note, but it would be easier for him if Beal Bank would extend the loan for another year or year and a half. According to Schleider, Dickenson said the bank would need to charge interest on the $40,000 (the discounted balance as of July 1, 1998) for the additional time of the payments. Schleider also testified Dickenson indicated an extension would not be a problem, Schleider did not need to do anything else to secure the extension, and Beal Bank would get back to him with the details. According to Schleider, Dickenson said, "We're set on go." Dickenson did not indicate in his phone call that he did not have the authority to authorize an extension.

Based on his conversation with Dickenson, Schleider expected to receive papers from Beal Bank reflecting an agreement, but he received nothing. Schleider, however, did not recall Dickenson stating he would send such paperwork. Schleider conceded he and Dickenson never agreed to a specific interest rate. Schleider also conceded they never reached an agreement about the duration of the extension.

Finally, Schleider was aware of, and understood, the provision in the note requiring any modification of its terms to be in writing.

Schleider nevertheless was "a hundred percent sure" at the conclusion of the phone call with Dickenson that they had agreed on a deal. Schleider testified that, if Dickenson had expressed any reservation about the extension, Schleider would have paid the $40,000 balance, rather than trigger the provision in the note for payment of the non-discounted balance.

Dickenson, who was not assigned to Schleider's loan, did not remember talking with Schleider and did not believe he would have made the statements Schleider attributed to him. Dickenson had no authority to grant an extension like the one Schleider described. His practice, when receiving calls like Schleider's, was to ask that the request be put in writing so he could forward it to the head of Beal Bank's commercial loan department for assignment to a loan officer.

Waiting to hear from Dickenson or to receive papers regarding the extension, Schleider made two payments of $2,500—one in June and one in July. Beal Bank accepted these payments, and Schleider testified, in choosing not to pay the $40,000 balance under the discount provision, he relied on Dickenson's assurances about the extension.

Schleider, however, did not try to call Dickenson after May 1998; and, about a week before the July 1, 1998 maturity date, the loan was assigned to Don Barber, another Beal Bank loan officer. The note provided a five-day grace period, and Barber sent Schleider a reminder, dated July 2, 1998, that the note had matured. The reminder also contained the following handwritten notation over Barber's signature: "pls call me to discuss."

The amount due and owing on the note was stated as $40,000 plus interest. Schleider did not pay the $40,000, but made a $2,500 payment on July 3. Because Schleider did not make the full discounted payment by the maturity date or the grace period, he owed $206,695.03 as of July 1, 1998.

Although Schleider received the July 2 reminder, in his mind the agreement he had with Dickenson was still "on the table." Schleider did not follow up on the July 2 reminder, despite the handwritten request for Schleider to call.

In late July or early August, Barber called and spoke with Schleider by telephone. According to Schleider, he explained his discussions with Dickenson and said he was expecting to hear something about the terms of the arrangement. Barber said, unless Schleider could prove it and had it in writing, it did not exist. Barber had no knowledge of a prior conversation between Schleider and Dickenson, and Schleider did not ask to speak with Dickenson during that or any other phone call with Barber.

Schleider also did not attempt to call Dickenson. On August 10, 1998, Schleider wrote to Barber setting forth various proposals for paying off the note. Schleider also referred to the May 28 telephone conversation with Dickenson. Schleider explained he thought someone would call him back, but no one had. Finally, Schleider referred to the July payment he had made while waiting for a telephone call.

Barber testified he did not contact Dickenson in 1998 to investigate Schleider's claim. Barber did not do so because, according to Barber, Schleider's claims were beyond the normal scope of Beal Bank's practice—what Schleider was saying Dickenson had done "just ... couldn't have happened." Barber did not talk with Dickenson about the alleged conversation

until November 1999 or May 2000. Clark Enright, Beal Bank's senior vice president and head of the commercial loan department testified that, under these facts, he would have asked Dickenson what the facts were and could think of no good excuse for Barber's failure to do so for a year or a year and a half.

In October 1999, a little over a month after receiving a demand letter from Beal Bank's attorney, Schleider sued Beal Bank. He asserted claims for fraud, negligent misrepresentation, breach of contract, and sought "declaratory judgment of enforcement [sic] of a contract as modified, based upon ... Beal's failure to abide by the terms of an oral modification of a written agreement with ... Schleider." Beal Bank answered and counterclaimed, seeking to recover the unpaid principal and accrued interest due under the note.

Trial was to a jury. The parties stipulated Schleider failed to comply with the terms of the note. The jury found in favor of Schleider on all questions the jury answered. Specifically, the jury found (1) Schleider's failure to comply with the terms of the note was excused, (2) Beal Bank committed fraud against Schleider, (3) Schleider sustained $123,750.00 in past damages and in reasonable probability would sustain $64,583.33 in future damages as a result of the fraud, (4) Beal Bank made a negligent misrepresentation on which Schleider justifiably relied, (5) Schleider sustained $156,182.91 in past damages and in reasonable probability would sustain $89,583.33 in future damages as a result of the negligent misrepresentation, (6) there was clear and convincing evidence the harm to Schleider resulted from fraud, and (7) $80,000 in exemplary damages should be assessed against Beal Bank.

The trial court rendered judgment awarding Schleider fraud and exemplary damages. The court denied Beal Bank recovery on its counterclaim, but offset Schleider's damages by $46,399.35 (the amount plus prejudgment interest, which Schleider stipulated he still owed under the note). The trial court subsequently denied Beal Bank's motion for new trial.

## DISCUSSION

### I. Introduction

In four issues, Beal Bank argues the jury's findings "fail to support the judgment." Specifically, Beal Bank challenges the following findings: in issue one, the finding of fraud; in issue two, the findings of fraud damages; in issue three, the finding of exemplary damages; and in issue four, the finding in support of Schleider's defense of excuse. Because we conclude the evidence was legally insufficient to support the jury's finding of fraud, we sustain Beal Bank's issue one. Because of our resolution of issue one, we do not address issues two and three, dealing with fraud damages. On rehearing, we address the sufficiency of the evidence to support Schleider's alternative theory of recovery, negligent misrepresentation, and conclude the evidence is legally insufficient to support that theory, as well. Finally, we sustain Beal Bank's issue four, concluding the evidence was legally insufficient to support the jury's finding of excuse.

### II.

**Issue One: Legal Sufficiency of the Evidence to Support the Finding of Fraud and the Alternative Theory of Negligent Misrepresentation**

*A. Standard of review.* In issue one, Beal Bank argues the evidence was legally, or in the alternative factually, insufficient to support the jury's finding Beal Bank committed fraud against Schleider. When a party challenges the legal sufficiency of

the evidence supporting an adverse finding on an issue on which it does not have the burden of proof, that party must demonstrate on appeal that there is no evidence to support the adverse finding. *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 347 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983)). We consider all the evidence in the light most favorable to the jury's verdict, indulging every reasonable inference in favor of the prevailing party. *Price Pfister*, 48 S.W.3d at 347 (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998)). We will sustain a legal insufficiency point when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *Price Pfister*, 48 S.W.3d at 347 (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). If the record contains any evidence of probative force to support the jury's finding, we must overrule the legal insufficiency point. *Price Pfister*, 48 S.W.3d at 347 (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

### ◼ *B. Schleider's fraud claim.*

In the present case, Schleider's allegation of fraud rested on his purported conversation with Dickenson. Therefore, to recover for fraud, Schleider had to prove: (1) Dickenson made a material representation; (2) the representation was false; (3) when Dickenson made the representation, Dickenson knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) Dickenson made the representation with the intention

that Schleider act on it; (5) Schleider acted in reliance upon the representation; and (6) Schleider suffered injury. *See Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex.1998). A future promise to act, such as that attributed to Dickenson, constitutes fraud only when made with the intent to deceive and with no intention of performing the act. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *see T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex.1992) (stating lack of intent to perform must exist at time promise is made).

◼ Beal Bank argues there was no evidence of intent to deceive. Because intent to deceive or defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. *See Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 215 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex.1986)). In *Lozano v. Lozano*, Chief Justice Phillips explained the application of the "equal inference rule" to the review of circumstantial evidence:

> The equal inference rule provides that a jury may not reasonably infer an ultimate fact from meager circumstantial evidence "which could give rise to any number of inferences, none more probable than another." *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex.1997). Thus, in cases with only slight circumstantial evidence, something else must be found in the record to corroborate the probability of the fact's existence or non-existence.
>
> ... The applicable rule was succinctly stated in *Litton* [*Industrial Products, Inc. v. Gammage*, 668 S.W.2d 319 (Tex. 1984)] as follows: "When circumstances are consistent with either of the two facts and nothing shows that one is more

probable than the other, neither fact can be inferred." *Id.* at 324.

. . . .

Properly applied, the equal inference rule is but a species of the no evidence rule, emphasizing that when the circumstantial evidence is so slight that any plausible inference is purely a guess, it is in legal effect no evidence. But circumstantial evidence is not legally insufficient merely because more than one reasonable inference may be drawn from it. If circumstantial evidence will support more than one reasonable inference, it is for the jury to decide which is more reasonable, subject only to review by the trial court and the court of appeals to assure that such evidence is factually sufficient.

Circumstantial evidence often requires a fact finder to choose among opposing reasonable inferences. *See, e.g., Farley v. M M Cattle Co.,* 529 S.W.2d 751, 757 (Tex.1975). And this choice in turn may be influenced by the fact finder's views on credibility. Thus, a jury is entitled to consider the circumstantial evidence, weigh witnesses' credibility, and make reasonable inferences from the evidence it chooses to believe. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 797 (1951).

52 S.W.3d 141, 148–49 (Tex.2001) (Phillips, C.J., concurring and dissenting).[2]

■■■ Chief Justice Phillips further explained, although circumstantial evidence may be used to establish any material fact,

"it must transcend mere suspicion." *Id.* at 149. Reasoning from circumstantial evidence often involves linking apparently insignificant and unrelated events to establish a pattern. *See id.* A court, therefore, must not view each piece in isolation, but in view of all known circumstances. *See id.* Nevertheless, "[l]egally sufficient circumstantial evidence requires a logical bridge between the proffered evidence and the necessary fact." *Id.* at 152 (citing *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059, 1064 (1898)).

Schleider argues the following evidence supports the jury's finding of fraudulent intent:

● A telephone conversation between Schleider and Dickenson, in which Dickenson told Schleider the extension was not a problem, Schleider did not have to do anything else, and the bank would get back with Schleider;

● Schleider's telephone records indicating a 2.9 minute call to Beal Bank on May 28, 1998, and testimony from Barber, another Beal Bank loan officer, it would take only five seconds for a loan officer to tell Schleider to put the request in writing because the loan officer did not have authority to approve the loan;

● Purported inconsistency in Barber's testimony about whether Dickenson had told Barber he had not talked with Schleider or whether Dickenson

---

**2.** Chief Justice Phillips also explained:

*Litton* exemplifies the type of case in which the rule may apply. There, the Deceptive Trade Practices Act applied if, but only if, a ratchet adapter was sold after the Act's effective date. Similar adaptors had been sold both before and after this date, and nothing in the record provided a clue about the particular adaptor's date of manufacture or sale. Thus, the meager circumstan-

tial evidence gave rise to equal inferences, not because two or more reasonable inferences could be drawn, but because there was no reasonable basis in the record for inferring either that the ratchet adaptor was or was not sold after the effective date of the DTPA.

*Lozano v. Lozano,* 52 S.W.3d 141, 148 (Tex. 2001) (Phillips, C.J., concurring and dissenting).

told Barber he had not made a deal with Schleider;

- The bank's not having called Dickenson as a live witness;

- Dickenson's testimony (by deposition) he had no recollection of telling Schleider an extension would not be a problem, coupled with Dickenson's testimony he (Dickenson) had no idea why he would have made a particular statement Schleider attributed to him;

- The lack of any written documentation by Dickenson or Beal Bank regarding the conversation between Dickenson and Schleider;

- Barber's failure, for well over a year, to contact Dickenson to investigate Schleider's report of the conversation with Dickenson, coupled with testimony from Beal Bank's president there was no good excuse for this failure;

- A motive on Beal Bank's part to mislead Schleider so Beal Bank could collect a balance of more than $200,000 instead of approximately $40,000;

- A lack of motive on Schleider's part for missing the final installment payment; and

- Testimony from the managing director and senior vice president of another bank that he would not have to go to a loan committee for approval of a $37,000 loan, but could do that himself.

In short, the only representations Schleider attributes to Dickenson are (1) the extension would not be a problem, (2) "we're set on go," and (3) Beal Bank would get back to Schleider. Considering the preceding evidence in the light most favorable to the jury's verdict and indulging every reasonable inference in favor of Schleider, we cannot conclude there is any evidence of probative force to support a finding Dickenson, at the time he purportedly made these representations, had the intent of deceiving Schleider, with no intention Beal Bank would perform.

■■■ The fact Beal Bank did not perform, standing alone, is no evidence of a lack of intent to perform at the time the agreement was made, but only "a circumstance to be considered with other facts to establish intent." *Schindler v. Austwell Farmers Coop.*, 841 S.W.2d 853, 854 (Tex. 1992) (per curiam). The mere failure to perform a contract is no evidence of fraud. *See id.* Denial of having made a promise is also a factor showing no intent to perform when the promise was made. *T.O. Stanley Boot*, 847 S.W.2d at 222. In the present case, however, Dickenson did not deny having made the purported representations. Dickenson simply did not recall the content of his conversation with Schleider, and other testimony indicated he would not have had the authority to approve the extension personally.[3]

The evidence in the present case is comparable to the type and amount of evi-

---

**3.** As in oral argument, Schleider, in his post-submission brief, emphasizes Dickenson's testimony about his lack of ability to approve the extension. Schleider then analogizes his case to *Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). In *Formosa Plastics*, however, the director of Formosa's civil department admitted Formosa acted deceptively by representing in its bid package contractors would have the ability to schedule delivery of concrete when in actuality Formosa had secretly decided to set up its own delivery schedule in order to save money. *See id.* at 44. In the present case, Dickenson's inability to approve the extension or to present it to the approval committee says nothing about whether, when Dickenson made the purported representations to Schleider, Dickenson had no intention Beal Bank would perform. It merely reflects Beal Bank failed to perform the agreement Schleider claims it made through Dickenson.

dence found legally insufficient to establish intent to defraud in *T.O. Stanley Boot*. In *T.O. Stanley Boot*, the petitioners claimed the bank misrepresented it would loan them $500,000. 847 S.W.2d at 222. At trial, the bank's president denied having agreed to make the loan. *Id.* In addition, the petitioners referred to a memorandum, written shortly after a meeting in which the loan was discussed, in which a bank officer referred to compiling resumes for a Small Business Administration loan package, thereby suggesting the bank was looking at alternative sources for the petitioners to obtain the loan. *Id.* The supreme court concluded "the evidence in the record of the Bank's intention not to perform is so weak that it creates only a mere surmise or suspicion of its existence. When evidence is so weak it constitutes no evidence. Such evidence will not support a verdict." *Id.*

**C. Disposition of issue one as related to fraud.** Just as the evidence was legally insufficient to support the verdict in *T.O. Stanley Boot*, so it is insufficient to support the jury's finding of fraud in the present case. We sustain Beal Bank's issue one. Because of our resolution of Beal Bank's issue one, it is not necessary to address Beal Bank's issues two and three, which are directed at the compensatory and exemplary damages for fraud.

**D. Schleider's alternative theory of recovery: negligent misrepresentation.** On rehearing, Schleider argues he is entitled to elect recovery for negligent misrepresentation in the face of this court's reversal of his judgment for fraud.[4] In *Boyce Iron Works, Inc. v. Southwestern Bell Telephone Co.*, the supreme court explained, "When the jury returns favorable findings on two or more alternative theories, the prevailing party need not formally waive the alternative findings. That party may seek recovery under an alternative theory if the judgment is reversed on appeal." 747 S.W.2d 785, 787 (Tex.1988). Beal Bank, however, initially contends Schleider waived his right to recover on the alternative theory because he did not incorporate the jury's findings on that theory into the judgment.[5] In support, Beal Bank relies on the following language in *Boyce:* "By incorporating the jury's findings in the court's judgment, Boyce did everything it could to preserve the right of recovery under the alternative theory." *Id.* The supreme court reiterated this language in *Oak Park Townhouses v.*

---

**4.** In our original opinion, we declined to address recovery under the alternative theory of negligent misrepresentation because the parties had not briefed the issues of liability and damages under that theory. *See Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 119–20 (Tex.App.-Texarkana 1994) (declining to address recovery under alternative theory when parties did not brief issue), *vacated pursuant to settlement agreement, Crum and Forster, Inc. v. Monsanto Co.*, No. 06–92–00100–CV, 1995 WL 273592 (Tex.App.-Texarkana Mar.9, 1995). We did however, observe Schleider would be permitted, in a motion for rehearing, to argue the issues of liability and damages under his alternative theory. *See Chesshir v. First State Bank*, 620 S.W.2d 101, 101–02 (Tex.1981) (per curiam) (holding court of appeals erred when it did not consider appellees' conversion action even though it

was urged for the first time on rehearing after appellate court reversed judgment in appellees' favor); *see also Boyce Iron Works, Inc. v. Southwestern Bell Telephone Co.*, 747 S.W.2d 785, 787 (Tex.1988) (following *Chesshir*). Both parties have now briefed the issues.

**5.** Beal Bank also argues Schleider is seeking greater relief than that provided under the existing judgment because (1) the actual damages found for negligent misrepresentation were greater than those for fraud, and (2) the judgment contains a Mother Hubbard cause. The first argument overlooks the fact that exemplary damages are not available for the negligent misrepresentation claim. The second argument is not supported by authority. See Tex.R.App. P. 38.1(h).

*Brazosport Bank of Texas, N.A.*, 851 S.W.2d 189, 190 (Tex.1993) (per curiam).

We have found no case holding that the jury's findings on the alternative theory must be incorporated into the judgment in order for a party to rely on that theory in the event of appellate reversal. To the contrary, in *Commonwealth Lloyds Insurance Co. v. Downs*, the Fort Worth court of appeals concluded the appellee had not waived his right to an appellate cross-point even though the trial court, which signed the appellee's proposed judgment, had specifically denied recovery under the alternative theories in question. 853 S.W.2d 104, 109 (Tex.App.-Fort Worth 1993, writ denied). We therefore consider the sufficiency of the evidence to support the jury's verdict in favor of Schleider on his alternative theory of negligent misrepresentation.

■■■■ The elements of a cause of action for negligent misrepresentation are: (1) the defendant's making a representation in the course of its business, or in a transaction in which it has a pecuniary interest; (2) the defendant's supplying "false information" for the guidance of others in their business; (3) the defendant's failure to exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff's suffering pecuniary loss by justifiably relying on the representation. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991)). The type of "false information" contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct. *Id.* (citing *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 294 (Tex.App.-El Paso 1992, writ denied)).

■■■■ Moreover, when a written contract exists, it is more difficult for a party to show reliance on subsequent oral representations. *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 908 (Tex.App.-Houston [1st Dist.] 1995, writ denied). "[N]egligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties." *Airborne Freight*, 847 S.W.2d at 295.

Schleider points to the following evidence of Dickenson's representations: (1) the extension, with Schleider paying at least $2,500 a month at the current interest rate, would not be a problem based on Schleider's record, (2) "we're set on go," and (3) there was nothing for Schleider to do because Beal Bank would get back to Schleider with the details. As Schleider characterized these statements in closing argument in the trial court, they constituted a representation "your note *will be* extended" (emphasis added). In argument in the trial court and in his original brief in this court, Schleider also characterized these statements as a "promise." On rehearing, Schleider, for the first time, characterizes Dickenson as "representing that the bank had extended the maturity date for the loan, when in fact it had not." As set forth and argued at trial, however, there was no evidence Dickenson made a misstatement of existing fact; rather the statements Schleider attributed to him involved future conduct, which are not actionable under a theory of negligent misrepresentation. *See Allied Vista*, 987 S.W.2d at 141.

Additionally, the parties had a written contract governing the loan. The note contained the provision that "[n]o modification or indulgence by any holder hereof shall be binding unless in writing." As the First Court of Appeals stated in *Bluebonnet Savings*, "The contract itself is notice

of binding duties, and when it requires that amendments be in writing, that is additional notice not to rely on oral representations." 907 S.W.2d at 908.

In *Bluebonnet*, the court of appeals concluded, as a matter of law, that the borrowers failed to prove they justifiably relied to their detriment on statements by the lender's agents that "everything looked fine" regarding a loan restructuring proposal and "everything would be okay." *Id.* at 909. In *Bluebonnet*, the borrower, whose principal was an experienced, self-employed businessman who had completed numerous large commercial real estate transactions, (1) admitted that the lender's employees also had stated the proposal had to be presented to the loan committee, (2) knew the loan committee's approval was a necessary prerequisite to restructuring, and (3) was in receipt of frequent correspondence from the lender's attorneys threatening foreclosure and repeatedly posting property securing the loan for sale. *Id.* at 907, 909–10.

In the present case, Schleider had been in the restaurant business since 1974, during which time he had arranged many loans. He testified there had been "renewals and everything had been via telephone. *We'd go in and sign what we talked about on the telephone.* ... [F]or years we have ... dealt that way here" (emphasis added). Although, unlike the events in *Bluebonnet Savings*, there is no testimony Dickenson told Schleider the proposal had to be presented to the loan committee, Schleider testified he was aware of the provision that no modification

was binding unless it was in writing. Schleider also testified he knew that the details, like the interest rate and specific due date, were still to be determined. Given Schleider's awareness that modifications had to be in writing and given that any modification depended on the parties agreeing to an interest rate and due date, we conclude, as a matter of law, Schleider failed to prove he justifiably relied to his detriment on Dickenson's statements. *See Bluebonnet Savings*, 907 S.W.2d at 909 (holding no justifiable reliance as a matter of law); *see also In re Absolute Res. Corp.*, 76 F.Supp.2d 723, 730, 732–33 (N.D.Tex. 1999) (holding, as a matter of law, no justifiable reliance on statements like "the deal is real" and "we will fund next week"; also observing statement loan was a "done deal," not sufficient to support claim for negligent misrepresentation).[6]

We conclude there is no evidence to support the jury's verdict on Schleider's alternative theory of negligent misrepresentation. Accordingly, we render judgment Schleider take nothing under his alternative theory of recovery.

## III.

### Issue Four: Sufficiency of the Evidence to Support the Finding of Excuse

In issue four, Beal Bank contends the evidence was legally insufficient, or in the alternative factually insufficient, to support the jury's finding Schleider's failure to comply with the terms of the note was excused. The trial court charged the jury

---

**6.** Schleider cites two cases in which courts have compared the concept of unjustifiable reliance to that of comparative negligence: *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1025 n. 5 (5th Cir.1990); and *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 975 S.W.2d 1, 18 (Tex.App.-Waco 1997), *rev'd on other grounds*, 973 S.W.2d 662 (Tex.1998). He

then suggests Beal Bank, by not requesting a jury question on comparative negligence, waived any argument there was no evidence of justifiable reliance. As discussed above, however, justifiable reliance is an element of negligent misrepresentation; and, thus, it was Schleider's burden to prove he justifiably relied on Dickenson's representations.

on modification, waiver, novation, and equitable estoppel, respectively, as follows:

Failure to comply with a term in an agreement is excused if the parties agreed that a new term would take its place.

Failure to comply by Rob Schleider is excused if compliance is waived by Beal Bank. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Failure to comply with the one agreement is excused if the parties agreed that a new agreement would take its place.

Failure to comply by Rob Schleider is excused if all of the following circumstances occurred:

1. Beal Bank

a. by words or conduct made a false representation or concealed material facts;

b. with knowledge of the facts or with knowledge or information that would lead a reasonable person to discover the facts; and

c. with the intention that Rob Schleider would rely on the false representation or concealment in acting or deciding not to act; and

2. Rob Schleider

a. did not know and had no means of knowing the real facts; and

b. relied to *his* detriment on the false representation or concealment of material facts.

■■■■ *A. Modification and novation.* As the jury was instructed, the defenses of modification and novation rested, in part, on the existence of an agreement between Schleider and Beal Bank.[7] Beal Bank argues there is no evidence Schleider and Beal Bank agreed on the material terms so as to create a binding contract, such as would support modification or novation. We agree.

■■■■ When the parties leave an essential term open for future negotiation, there is no binding contract. *T.O. Stanley,* 847 S.W.2d at 221.[8] In the present case, there is no evidence Schleider and Beal Bank agreed on the duration of an extension of the loan, a new maturity date, the rate of interest that would apply, or the amount and number of additional payments. Thus, there is no evidence of a binding agreement in the present case. *See T.O. Stanley Boot,* 847 S.W.2d at 221-22 (holding alleged contract to make $500,000 line of credit available failed for indefiniteness when no evidence was introduced regarding interest rate of alleged loan or repayment terms); *Gerdes v. Mustang Exploration,* 666 S.W.2d 640, 644

**7.** The essential elements of a novation are: (1) a previous, valid obligation; (2) a mutual agreement of the parties to the acceptance of a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Vickery v. Vickery,* 999 S.W.2d 342, 356 (Tex.1999).

**8.** Whether the parties reached an agreement is a question of fact. *See Scott v. Ingle Bros. Pac., Inc.,* 489 S.W.2d 554, 556 (Tex.1972). Whether an agreement has all the essential terms to be an enforceable agreement, however, is a question of law. *See America's Favorite Chicken Co. v. Samaras,* 929 S.W.2d 617,

622, 625 (Tex.App.-San Antonio 1996, writ denied) (contrasting factual question of whether agreement existed with legal question of whether existing agreement comprised all essential terms); *see also McCreary v. Bay Area Bank & Trust,* 68 S.W.3d 727, 733 (Tex. App.-Houston [14th Dist.] 2001, pet. dism'd) (stating question whether deposit contract is legally enforceable or binding is question of law); *Gaede v. SK Invs., Inc.,* 38 S.W.3d 753, 757 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (stating whether agreement constitutes valid contract generally is legal determination for court).

(Tex.App.-Corpus Christi 1984, no writ) (holding contract for sale of water, which did not specify price, was unenforceable because price of water was essence of contract); *Bridewell v. Pritchett,* 562 S.W.2d 956, 958–59 (Tex.Civ.App.-Fort Worth 1978, writ ref'd n.r.e.) (holding contract unenforceable because rate of interest was "of the essence" and not "detail" to be supplied by court); *Terrell v. Nelson Puett Mortgage Co.,* 511 S.W.2d 366, 369 (Tex. Civ.App.-Austin 1974, writ ref'd n.r.e.) (holding promise lacked definiteness of essential element, *i.e.,* the total sum to be underwritten during a period of six years). Because there is no evidence of a binding agreement, there is no evidence of modification or novation.

■■■ **B. Waiver.** Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Cont'l Casing Corp. v. Siderca Corp.,* 38 S.W.3d 782, 789 (Tex. App.-Houston [14th Dist.] 2001, no pet.) (citing *United States Fid. & Guar. Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 357 (Tex.1971)). Waiver is an affirmative defense that can be established by a party's express renunciation of a known right, or by silence or inaction for so long a period as to show an intention to yield the known right. *Cont'l Casing,* 38 S.W.3d at 789 (citing *Tenneco Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 643 (Tex.1996)). Waiver is largely a matter of intent. *Cont'l Casing,* 38 S.W.3d at 789. Thus, for a party's actions to support a finding of implied intent, the surrounding facts and circumstances must clearly demonstrate intent. *See id.* (citing *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n,* 1 S.W.3d 108, 111 (Tex.1999)).

The only evidence to which Schleider can point to support a finding of waiver

are Dickenson's purported representations that (1) an extension would not be a problem and (2) Beal Bank would get back to Schleider. As discussed above, these and other statements attributed to Dickenson do not constitute a binding agreement between the parties to extend the maturity date. Moreover, these representations are not inconsistent with the requirement in the note that "[n]o modification or indulgence by any holder hereof shall be binding unless in writing." Dickenson's purported representations are no evidence Beal Bank was waiving its right to enforce the original terms of the note.[9]

■■ **C. Estoppel.** "Courts have emphasized that 'estoppel requires a *reasonable* or *justified* reliance on the conduct or statement of the person sought to be estopped by the person seeking the benefits of the doctrine.'" *Allied Vista,* 987 S.W.2d at 142 (quoting *Simpson v. MBank Dallas, N.A.,* 724 S.W.2d 102, 108 (Tex.App.-Dallas 1987, writ ref'd n.r.e.)) (emphasis in *Simpson* ). For the reasons set forth in Section II.D., above, under the discussion of negligent misrepresentation, we hold, as a matter of law, Schleider failed to prove he justifiably relied on Dickenson's statements.

In the present case, there is no evidence to support the jury's finding that Schleider's failure to comply with the terms of the note was excused. We sustain Beal Bank's issue four.

## CONCLUSION

Having sustained Beal Bank's issue one, we reverse that portion of the judgment awarding Schleider $141,933.98 in compensatory damages, $13,181.39 in prejudgment interest, and $80,000 in exemplary dam-

**9.** Contrary to Schleider's perception, this statement does not constitute a holding there could be no oral waiver of the July 1 maturity date.

ages on his claim for fraud. We render judgment Schleider take nothing on his claims for fraud and negligent misrepresentation.

Having sustained Beal Bank's issue four, we reverse that portion of the judgment ordering Beal Bank take nothing on its counterclaim. The parties stipulated Schleider failed to comply with the terms of the note, which had a balance due of $206,695.03 on July 1, 1998. Accordingly, we render judgment Beal Bank recover $206,695.03 plus post-judgment interest on its counterclaim against Schleider.[10]

10. In its prayer for relief in this court, Beal Bank does not seek to recover any interest on the note accruing after the maturity date and running through the date of judgment.