**Affirmed and Memorandum Opinion filed November 1, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00442-CV

---

### CHARLES TRINH D/B/A THYBACH REBID, FARM & RANCH, Appellant

### V.

### LANG VAN BUI, LAO X. DAO, HIEN K. TRAN, VIETNAMESE THERAVADA BUDDHIST SANGHA CONGREGATION, VTEX REALTY, INC., SOPHIA HUYNH, SEAFOOD PIER, LLC, LANDAMERICA PARTNERS TITLE COMPANY, PACIFIC INTERESTS PARTNERS, LP, CHRISTOPHER M. PHAM COMPANY, LLC, CHRISTOPHER M. PHAM, AND LOTUS BUDDHIST CONGREGATION, Appellees

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2009-49722**

---

## M E M O R A N D U M   O P I N I O N

In this breach of contract and tort case, appellant Charles Trinh d/b/a Thybach Rebid, Farm & Ranch ("Trinh") appeals from summary judgments in favor of the appellees. He asserts that the appellees failed to establish their entitlement to summary judgment as a matter of law and that fact issues abound. He further contends that the trial

court erred in awarding attorney's fees to appellees Vietnamese Theravada Buddhist Sangha Congregation (the "Sangha Congregation"), Lotus Buddhist Congregation (the "Lotus Congregation"), Lang Van Bui, and Vtex Realty, Inc. ("Vtex"). After careful review of the record and briefs, we affirm the trial court's summary judgments and attorney's fees awards.

## BACKGROUND

In November 2008, faced with financial difficulties, real-estate investor Charles Trinh engaged Lang Van Bui and Vtex to assist him in selling a property located on Sugarland Howell Road in Harris County (the "property"). Trinh had heard that Bui was looking for a location to build a Buddhist temple. As part of the listing agreement, Vtex, Bui, and Trinh agreed that Vtex and Bui could act as an intermediary broker, meaning that Vtex and Bui could act as a broker for both Trinh and a prospective purchaser. The listing agreement provided the following options for Vtex and Bui when acting as an intermediary broker:

> (1) If a prospect who Broker represents is serviced by an associate other than the associate servicing Seller under this Listing, Broker may notify Seller that Broker will: (a) appoint the associate then servicing Seller to communicate with, carry out instructions of and provide opinions and advice during negotiations to Seller; and (b) appoint the associate then servicing the prospect to the prospect for the same purpose.

> (2) If a prospect who Broker represents is serviced by the same associate who is servicing Seller, Broker may notify Seller that Broker will: (a) appoint another associate to communicate with, carry out instructions of, and provide opinions and advice during negotiations to the prospect; and (b) appoint the associate servicing the Seller under this Listing to the Seller for the same purpose.

> (3) Broker may notify Seller that Broker will make no appointments as described under this Paragraph 9A and, in such an event the associate servicing the parties will act solely as Broker's Intermediary representative, who may facilitate the transaction but will not render opinions or advice during negotiations to either party.

Finally, the parties agreed that if Trinh "s[old] this property by himself, [Trinh] shall only pay 1% of the sale price to Vtex Realty."

2

In December 2008, Bui presented Trinh with an earnest money contract for the sale of the property to the Sangha Congregation for $1.2 million. The earnest money contract provided that Vtex was an intermediary between Trinh and the Sangha Congregation and that Trinh would pay Vtex one percent of the sales price as a commission. Although Trinh expected to close the transaction sooner, the closing was delayed until late March 2009. Trinh declined to close the transaction because the Sangha Congregation, through its monks, Lao X. Dao and Hien K. Tran, refused to include a provision in the closing documents that Trinh had handwritten on his copy of the earnest money contract,[1] which would have guaranteed that Trinh would be awarded a contract to construct a temple on the property should he be the lowest bidder in a bidding process. Trinh cancelled both the listing agreement with Bui and Vtex, as well as the earnest money contract with the Sangha Congregation via an email dated March 23, 2009. He authorized the payment of the money that the Sangha Congregation had paid into escrow to an entity called Lotus Congregation.

On April 1, 2009, Trinh was contacted by Sophia Huynh, who informed him that she had an interested buyer for the property. This buyer was identified as Seafood Pier, LLC. Trinh agreed to sell the property to Seafood Pier for $1.1 million, "payable in cash at the Closing . . . subject to adjustments and prorations[.]" The earnest money contract contained an assignment provision, stating: "Purchaser may freely assign this Agreement to any third party. If Purchaser assigns the Agreement, Purchaser shall be released from any and all liability under this Agreement." LandAmerica Title Company ("LandAmerica") was identified as the title company for closing. Trinh agreed to pay Pacific Interests Partners, LP ("Pacific Interests") an arrangement fee of $16,000 out of the closing proceeds for the sale of the property to Seafood Pier. Closing was initially scheduled for May 1, 2009, but Trinh was instructed that closing had been reset to May 4.

---

[1] The copy of the earnest money contract on file with the title company did not contain this provision.

Christopher M. Pham, the designated closing officer, corresponded with Trinh regarding the closing.[2]

According to Trinh, the buyer appeared at the closing on May 1 and executed all the buyer's documents. Trinh executed the closing documents on May 4, discovering only then that Seafood Pier had assigned its purchase rights to the Lotus Congregation. Trinh suspected that this congregation was the same, or closely related to, the Sangha Congregation, with whom he had cancelled the previous transaction. Trinh also was presented with a promissory note of $200,000, payable in two years with no interest, rather than the cash he had expected to receive. Trinh suspected that he was being "cheated" by the various individuals and entities involved in the first aborted transaction and those entities and individuals involved in this second transaction. Nonetheless, he decided to close the transaction because of his difficult financial position. Trinh received and deposited the proceeds from the sale of the property. Further, after demand from Trinh's counsel, the Lotus Congregation paid in full the $200,000 promissory note in March 2010. In the interim, however, Trinh declared Chapter 11 bankruptcy.

Trinh filed suit against appellees Bui; Vtex; the Sangha Congregation; Huynh; Seafood Pier; LandAmerica; Pacific Interests; Christopher M. Pham Company, LLC (the "Pham Company"); Pham; and the Lotus Congregation in August 2009. In this petition, Trinh alleged, in pertinent part, the following:

- On or about November 18, 2008 Plaintiff Charles Trinh entered into an exclusive listing agreement with Lang Van Bui as agent and representative of Vtex Realty, Inc. Lang Van Bui agreed to be the exclusive listing agent and to represent Charles Trinh in the sale of certain property owned by Trinh generally known as the Sugarland Howell Rd. Property. Subsequently, Lang Van Bui presented to Trinh an Earnest Money Contract for the sale of property to Vietnamese Theravada Buddhist Sangha Congregation for $1.2 million dollars and an agreement that Trinh would be awarded the construction contract to build the Temple on the land. Lang Van Bui

---

[2] Our record reflects that both LandAmerica and Pham had been designated to be involved at the aborted closing between Trinh and the Sangha Congregation.

4

however failed to disclose to Trinh that he was a member of the purchaser's Temples and well known to the congregation's representative in the purchase. During the pendency of the sale and closing Lang Van Bui intentionally interfered with the negotiations between Trinh and defendant's representative and continually pressured Trinh to reduce the sales prices. Lang Van Bui convinced the defendant's representative to revoke the construction of the Temple provision. Trinh on or about March 30, 2009 at closing at LandAmerica Partners Title, cancelled the Earnest Money Contract and refused to sell the property to Defendant Vietnamese Theravada Buddhist Sangha Congregation for less than the amount specified in the earnest money contract including the construction contract, which he was ready, willing and able to do.

- A day or so later, on·or about April 1, 2009, Trinh was contacted by Sophia Huynh with LandAmerica Partners Title Company indicating she had found a cash buyer for the property for the amount of $1.1 million.

- An Earnest Money Contract was prepared by Chris Pham, the husband of Sophia Huynh between Charles Trinh and Seafood Pier, LLC. Sophia Huynh is the Manager and Registered Agent for Seafood Pier, LLC. Closing was to be within ten (10) days of the Earnest Money Contract, however the purchasers delayed because of difficulty apparently in obtaining the cash financing. Also on or about April 1, 2009 Trinh was presented with an agreement to pay an arrangement fee to Pacific Partners, LP for "brokerage" services. Pacific Partners, LP is owned by Christopher Pham through the Christopher M. Pham Company, LLC.

- Closing was finally arranged for May 1, 2009 and the buyer ended up being Lotus Buddhist Congregation the same buyer of the original contract or entity of that buyer. The closing was originally set for May 4th, however the buyer appeared on May 1st at LandAmerica Partners Title and executed all purchaser's documents. Mr. Trinh, the plaintiff, appeared on May 4th the closing date to sign the seller's documents and at this time discovered the true name of the purchaser, and also the price was not a cash price but a financing arrangement for which Lang Van Bui used property owned by him as collateral to obtain financing. Further, rather than receiving an additional cash payment of $200,000, Mr. Trinh was presented with a promissory no interest note for $200,000 payable in two years as a second lien note. Mr. Trinh had not agreed to this and this was a breach of the Earnest Money Contract.

5

- Mr. Trinh however was in a very difficult situation with the lender of the property which was well known to the parties herein and under duress and coercion accepted the $200,000 note, but did not accept for two years without interest and/or for a second lien note.
- Mr. Trinh sues herein for the $200,000 evidenced by the Promissory Note, and the additional $100,000 which was the additional amount of the original sales price under the first contract.

Based on these allegations, Trinh alleged the following causes of action: (1) fraud by misrepresentation; (2) common law fraud; and (3) negligent misrepresentation.

In August 2010, after the Lotus Congregation paid the promissory note in full, Trinh amended his petition to add Dao and Tran as plaintiffs. He added the following factual allegations: (1) that Bui failed to disclose his membership in the Sangha Congregation, of which the Sangha Congregation's representative, Dao, was well aware; (2) that during the pendency of the sale and closing Bui and Tran, another member of the Sangha Congregation, "intentionally and willfully interfered with negotiations" between Trinh and Dao; (3) that Bui knowingly and willfully disclosed confidential information to Dao and Tran regarding Trinh's precarious financial situation; (4) that Huynh held herself out to be an agent or employee of LandAmerica when she contacted Trinh regarding the cash buyer for the property; (5) that Pham was the boyfriend, rather than the husband, of Huynh; (6) that unknown to Trinh, Huynh was the manager and registered agent for Seafood Pier; (7) that unknown to Trinh, Pacific Partners was owned by Pham through the Pham Company; (8) that "based on information and belief by Trinh the [brokerage] fee was split with Seafood Pier"; (9) that Huynh represented to Trinh that cash financing was in place when it was not; (10) that, "[a]s a result of the defendants' actions Trinh was unable to refinance other mortgaged property and was forced into foreclosure and bankruptcy"; and (11) that Trinh sought, rather than the $200,000 payment of the promissory note from the Lotus Congregation, $300,000 "in lost profits from the construction proceeds of first contract or in the alternative, rescission or cancellation of the second agreement and enforcement (specific performance) of the original Earnest Money Contract."

6

Based on the original and additional alleged facts, Trinh brought the following causes of actions against the following appellees, presented in tabular form for ease of reference:

| Appellee | Causes of Action |
|---|---|
| Bui | Fraudulent misrepresentation; fraudulent inducement to contract; constructive fraud; failure to disclose; negligent misrepresentation; breach of fiduciary duty; conspiracy; aiding and abetting liability; joint enterprise liability |
| Vtex | Liability for Bui's torts under the theory of respondeat superior |
| The Sangha Congregation | Breach of the earnest money contract; principal-agent liability for Bui's actions; conspiracy; aiding and abetting liability; joint enterprise liability |
| Dao | Principal-agent liability for Bui's actions; conspiracy; aiding and abetting liability; joint enterprise liability |
| Tran | Principal-agent liability for Bui's actions; conspiracy; aiding and abetting liability; joint enterprise liability |
| Huynh | Fraudulent misrepresentation; fraudulent inducement; constructive fraud; failure to disclose; negligent misrepresentation; breach of fiduciary duties; conspiracy; aiding and abetting liability; joint enterprise liability |
| Pham | Failure to disclose; breach of fiduciary duties; conspiracy; aiding and abetting liability; joint enterprise liability |
| The Pham Company | Liability for Pham's torts under the doctrine of respondeat superior |
| LandAmerica | Liability for Huynh's and Pham's torts under the doctrine of respondeat superior |
| Pacific Partners | Failure to disclose; breach of fiduciary duties; conspiracy; aiding and abetting liability; joint enterprise liability |
| The Lotus Congregation | Principal-agent liability for actions of Bui, Tran, Huynh, or Pham; conspiracy; aiding and abetting liability; joint enterprise liability |

Trinh further alleged that the appellees used the corporate form to perpetrate fraud. However, on appeal he has abandoned that allegation. He has also abandoned allegations of breach of fiduciary duty against all appellees except Bui and Vtex.[3]

The Sangha Congregation, the Lotus Congregation, Dao, and Tran filed a traditional and no-evidence summary-judgment motion regarding Trinh's claims against them on November 23, 2010. Among other things, these appellees asserted that Trinh had ratified the sale of the property to the Lotus Congregation and thus, his fraud claims failed. They further asserted Trinh had no evidence of the rest of his claims against them. The next day, Bui and Vtex filed a traditional and no-evidence summary-judgment motion in response to Trinh's claims against them. They likewise asserted a ratification defense, as well as asserting that Trinh had no evidence of his claims against them. Also that day, LandAmerica filed a motion for summary judgment on Trinh's vicarious liability claims against it as the alleged employer of Huynh and Pham, and it also asserted that Trinh had ratified the transaction. Pacific Interests, the Pham Company, Pham, and Huynh filed a motion to join the other defendants' summary-judgment motions. Seafood Pier also filed a motion to join these summary-judgment motions. Trinh responded to all the summary-judgment motions on February 7, 2011, attaching an affidavit and several other exhibits. The Sangha and Lotus Congregations, Dao and Tran replied to Trinh's response.

On February 14, 2011, the trial court granted the appellees' motions for summary judgment and the motions of those appellees who had sought to join the other summary-judgment motions, rendering the summary judgments final. Dao, Tran, Bui, Vtex, the Sangha and the Lotus Congregations filed post-judgment motions for attorney's fees later that month, contending that they were entitled to attorney's fees because (1) Trinh's case was frivolous and sanctionable pursuant to Texas Rule of Civil Procedure 13 and (2) the

---

[3] Although no causes of action were asserted specifically against Seafood Pier, it joined in the summary-judgment motions filed by the other appellees. Additionally, other than in the style of the case, Trinh does not mention Seafood Pier in his response to the summary-judgment motions filed by the appellees.

8

contracts in question contained enforceable "loser pays" provisions. Although the trial court initially denied these motions, on reconsideration, the trial court awarded attorney's fees to the Sangha Congregation and the Lotus Congregation in the amount of $60,266.33. It also awarded attorney's fees to Bui and Vtex in the amount of $39,127.59. These parties were also awarded appellate attorney's fees in the event of an appeal. The orders do not indicate the grounds for the award of fees. From these judgments and orders, Trinh appealed.

## THE SUMMARY JUDGMENTS

In his first three issues, Trinh challenges the propriety of summary judgment, asserting that (1) the appellees failed to conclusively establish their affirmative defenses, (2) the appellees failed to conclusively negate as a matter of law at least one element of Trinh's theory of recovery, and (3) a no-evidence summary judgment was not proper because "abundant" fact issues were established.

### A.     Standard of Review

We review a trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference, and we resolve any doubts in the nonmovant's favor. *Id.* Where, as here, the trial court grants the judgment without specifying the grounds, we affirm the summary judgment if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000).

A traditional summary judgment is proper when the defendant either negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.— Houston [14th Dist.] 2005, pet. denied). When the defendant has carried its summary judgment burden, the burden shifts to the nonmovant to raise a material fact issue

9

precluding summary judgment. *Va. Indon. Co. v. Harris Cnty. Appraisal Dist.*, 910 S.W.2d 905, 907 (Tex. 1995). When considering a no-evidence motion for summary judgment, we will sustain the motion when (1) there is a complete absence of proof of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Walker v. Thomasson Lumber Co.*, 203 S.W.3d 470, 474 (Tex. App.—Houston [14th Dist.] 2006, no pet.). With these principles in mind, we turn to the claims brought by Trinh and the summary-judgment grounds asserted by each of the appellees.

## B. Breach of Contract

Trinh alleged that the Sangha Congregation breached the earnest money contract it entered into with him.[4] On appeal, however, Trinh has provided no legal authority in support of his argument regarding breach of contract. Instead, he simply asserts, in a conclusory manner, that "[t]he summary judgment evidence was that [the Sangha Congregation] breached its initial earnest money contract with Trinh."[5] A brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Failure to cite legal authority or to provide substantive analysis of a legal issue results in waiver of the complaint. *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Accordingly, Trinh has waived any complaint regarding summary

---

[4] In his brief, Trinh also asserts that Bui and Vtex breached their listing agreement with him and that the Lotus Congregation and Seafood Pier breached the second earnest money contract. However, these causes of action were not pleaded as to these defendants, nor were they tried by consent because none of these specific defendants defended against claims of breach of contract in their summary-judgment motions. *See* Tex. R. Civ. P. 67 (discussing trial by consent).

[5] Interestingly, the record reflects that Trinh cancelled the earnest money contract with the Sangha Congregation and the listing agreement with Vtex and Bui via email dated March 23, 2009. Our record contains no other agreement regarding the sale of the property to the Sangha Congregation. Yet Trinh states in his affidavit that he appeared at closing for this transaction on March 30, 2009, "ready, willing and able to close according to the agreed terms of the Earnest Money Contract." We note that a seller does not ordinarily appear to close a cancelled real estate transaction.

10

judgment on his breach of contract claim, and we overrule his first three issues as they relate to this claim.

## C.    Fraud Claims

Trinh brought claims of fraud, constructive fraud, and fraud by failure to disclose against Bui and Huynh.  He also alleged that Pham committed fraud by failure to disclose.  In his brief, Trinh asserts that these defendants were sued because they failed to disclose to him their conflicts of interest, the relationships amongst the defendants, and their own capacity or involvement in the transactions.  He also contends that Huynh and Pham lied about the true identity of the purchaser in the second transaction—the Lotus Congregation—and its ability to pay cash at closing.

In their motions for summary judgment, the Sangha and Lotus Congregations, Dao, Tran, Bui, and Vtex asserted that Trinh's fraud-based claims against Bui, Huynh, and Pham fail because Trinh ratified the second transaction with the Lotus Congregation.[6]  An agreement may be ratified if a party, by word or conduct, affirms the agreement after becoming aware of any fraud that would otherwise impair the agreement. *Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 456 (Tex. App.—Corpus Christi 2006, pet. denied).  In other words, ratification occurs whenever the parties act in a way that recognizes, in spite of the revealed fraud, the existence of a binding contract.  *Chambers v. Equity Bank, SSB*, 319 S.W.3d 892, 898 (Tex. App.—Texarkana 2010, no pet.).

Here, Trinh testified that he knew he was being "cheated" before the anticipated close of the first transaction and well before the actual sale of the property.  He testified during his deposition that he knew Bui was dishonest before he engaged him to sell the property and that he confirmed this belief by sending a covert email to Bui from his wife's email account inquiring about the property.  Trinh stated that Bui replied that Bui

---

[6] Trinh alleged that these appellees were liable for the torts of Bui, Huynh, and Pham through various derivative theories, including agency, conspiracy, aiding and abetting, and joint enterprise. Further, as noted above, Huynh and Pham joined the summary-judgment motions filed by these appellees.

11

could sell the property at a very low price. But Trinh continued to work with Bui after confirming his suspicions that Bui was not working to sell the property in a manner favorable to Trinh: Trinh signed the earnest money contract with the Sangha Congregation *after* this email exchange occurred. Trinh cancelled the closing of the first transaction and even returned the earnest money the Sangha Congregation had paid into escrow. In fact, the record reflects, and Trinh admitted, that Trinh signed a document releasing this earnest money to the Lotus Congregation, even though the earnest money contract was between him and the Sangha Congregation. This document was signed by Trinh on March 19, 2009, well before the closing of the sale to the Lotus Congregation.

Trinh further stated that he conferred with his attorney prior to closing the transaction with the Lotus Congregation. He admitted that he was aware that he was being "cheated" as he signed the closing documents for the sale of the property to the Lotus Congregation. Yet he chose to close the transaction because he needed the money. Moreover, in March 2010, after filing suit against several of the appellees, Trinh accepted payment of the promissory note from the Lotus Congregation and used this money to help fund his bankruptcy reorganization plan. By accepting this payment, Trinh ratified this transaction and is precluded from avoiding the consequences of it. *See Ginther-Davis Ctr., Ltd. v. Houston Nat'l Bank*, 600 S.W.2d 856, 862 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (holding that appellants waived any right to complain about fraud in real estate transaction when they were aware of alleged fraud yet signed documents and accepted benefits of deal).

Trinh may not have been aware of the entirety of the alleged fraud at the time he closed the transaction with the Lotus Congregation. *See Formosa Plastics Corp., USA*, 216 S.W.3d at 457. But by the time he accepted the payment of the promissory note from the Lotus Congregation, Trinh had discovered all the operative facts regarding the alleged scheme amongst all the "players." By accepting the benefits of this allegedly fraudulently induced bargain after he was aware of the nature of the "scheme," he may not be heard to complain about it. *Cf. Fortune Prod. Co. v. Conoco, Inc.*, 62 S.W.3d 671,

12

677 (Tex. 2000) (citing *Spellman v. Am. Universal Inv. Co.*, 687 S.W.2d 27, 31–32 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) and stating that plaintiffs who accepted rentals and royalties after discovering fraud in inducement of mineral lease conveyance were left with their bargain and had no means of recovery).

For the foregoing reasons, the trial court properly granted summary judgment on Trinh's fraud claims against Bui, Huynh, and Pham.[7] We overrule Trinh's first three issues regarding Trinh's fraud claims.

---

[7] For the first time in his reply brief, Trinh asserts that ratification is not a defense to "a claim for business or economic coercion." First, Trinh waived this issue by failing to raise it in his original appellate brief. *Zurita v. Lombana*, 322 S.W.3d 463, 477 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

We further note that Trinh mentioned duress and "business coercion" in the section of his summary-judgment response regarding the summary-judgment motions filed by Bui and Vtex. In this section of his response, he was responding to Bui and Vtex's arguments regarding breach of fiduciary duty. The entirety of this "discussion" is as follows:

> 64.) Texas courts have indicated that duress can arise even where the threatening party threatens a permissible act. In *R.L. Mitchell v. C.C. Sanitation, Co., Inc.*, 430 S.W.2d 933, 938 (Tex. App.—Houst[o]n [14th Dist.] 1968, wit ref'd n.r.e.) the court of appeals found duress where an employer threatened to discharge an employee whom the employer was entitled to terminate. The court reasoned that an employer was attempting to oppress an employee for his own economic interest and thereby risked a finding of duress. The court seems to have viewed this case as one where the employee's will was effectively overrun.

> 65.) Similarly, in *State Nat'l Bank of El Paso v. Farah Mfg. Co.*, 678 S.W.2d 661 (Tex. App.—El Paso 1984, judgment set aside and & dismissed) the court held that "economic duress (business coercion) may be evidenced by forcing a victim to choose between distasteful and costly situations, *i.e.,* bow to duress or face bankruptcy, loss credit rating, or loss of profits from a venture." Again, the court focused on the motivation of the threatening party, observing that the more powerful party was seeking to advance his own economic interests by overwhelming the will of the weaker party. Hence, the *Bank of El Paso* rule is that a claim of duress can be made out in limited circumstances even where the threatening party is threatening something which it is lawfully entitled to do.

These authorities are in no way cited or applied as grounds to avoid summary judgment on the appellees' ratification defense. Thus, Trinh cannot be heard to have raised coercion and duress to avoid summary judgment on this defense. And as such, these grounds cannot support reversal of the trial court's summary judgment. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court . . . shall not be considered on appeal as grounds for reversal.").

13

**D.      Negligent Misrepresentation**

Trinh asserts that, if the actions of Bui, Huynh, and Pham did not amount to outright fraud, they certainly arose to the level of negligent misrepresentation. In their motions for summary judgment, the Sangha and Lotus Congregations, Dao, Tran, Bui, and Vtex all asserted that Trinh had no evidence of negligent misrepresentation. Specifically, they argued that the alleged "false information" supplied to Trinh was a promise of future conduct rather than a misstatement of existing fact. Such an allegation is no evidence of negligent misrepresentation. *See Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 651 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("The type of 'false information' contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct.").

In his summary-judgment response, Trinh claimed that Bui made negligent misrepresentations by stating that he had buyers "lined up" and ready to purchase the property when in fact no such buyers were available.[8] Trinh refers to his affidavit as evidence of this allegation. But in his affidavit, Trinh stated, "Bui represented to me that if I hired him as the exclusive selling agent, he would procure a buyer immediately." This statement is a promise of future conduct, not a misstatement of existing fact. *See id.* As such, it does not support a claim for negligent misrepresentation. *See id.*

Trinh further alleged in his response that "Bui also represented that the Congregation's financing had been approved and that the Congregation was ready to make the purchase according to the terms of the first earnest money contract." He refers to his affidavit as evidence of this allegation. But there is nothing in his affidavit to support this allegation.

---

[8] Trinh referenced no other alleged negligent misrepresentations by any other defendants in his summary-judgment response. Thus, he has waived any negligent misrepresentations claims as to Huynh and Pham.

Accordingly, with no evidence presented to the trial court in support of Trinh's negligent misrepresentation claims, the trial court properly granted summary judgment to appellees on these claims. We overrule his first three issues regarding these claims.

## E.  Breach of Fiduciary Duty[9]

On appeal, Trinh asserts for the first time that Bui had a financial interest in the transaction, a violation of his fiduciary duties to Trinh. However, Trinh failed to raise this argument in the trial court; thus we may not consider it on appeal. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Moreover, Trinh's entire argument, excluding his recitation of the elements of a realtor's duty under agency law, consists of the following:

> Vtex and Bui claim that as intermediaries, they were relieved of their duties to Trinh. But neither the common law nor the Occupations Code agree[s] with them. (CR 675-79). Mr. Trinh showed that a commercial listing agreement imposes heightened and additional duties upon a real estate broker and its agents, and that professional standards of care for brokers acting as intermediaries require the intermediary to act fairly and impartially. TEX. OCC. CODE § 1101.559[.] As demonstrated by Mr. Trinh, this did not occur. Bui worked against Trinh and lost him the sale to Vietnamese Theravada. And in fact, Bui did that in part for his own benefit. He profited directly from the information he obtained from his prior relationship with Trinh, to Trinh's financial detriment, and was a secret and undisclosed investor in the ultimate sale.

As explained above, a "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). As we previously mentioned, failure to provide substantive analysis of legal issues results in waiver of the complaint. *See Canton-Carter*, 271 S.W.3d at 931. Under these circumstances, Trinh has waived his breach of fiduciary duty complaints because he (1) failed to present them to the trial court and (2) failed to adequately brief

---

[9] As discussed above, Trinh has abandoned his breach of fiduciary duty claims as to all appellees except Bui and Vtex.

15

them on appeal.[10]  Accordingly, we overrule his first three issues relative to his breach of fiduciary duty claims.

## F.    Trinh's Derivative Liability Claims

Trinh sought to hold the Sangha Congregation, the Lotus Congregation, Dao, Tran, Bui, Vtex, Huynh, LandAmerica, the Pham Company, Pacific Interests, and Pham liable for the torts of others under various derivative theories liability including conspiracy, aiding and abetting liability, joint enterprise, and respondeat superior.  On appeal, Trinh has not developed his argument regarding these theories of liability; rather, he simply identifies the elements of each of these causes of action.  Trinh has utterly failed to provide any analysis applying the legal authorities he has cited to the facts of his case in a manner so as to demonstrate that the trial court committed reversible error when it granted the appellees motions for summary judgment on these claims.  *See id.*  ("It is not this court's duty to review the record, research the law, and then fashion a legal argument for appellant when []he has failed to do so.").  Further, because we have determined that summary judgment on Trinh's tort theories upon which these derivative claims rest, summary judgment on these claims is likewise proper.

In sum, we overrule Trinh's first three issues relating to the summary judgments.

## ATTORNEY'S FEES

## A.    Standard of Review

Texas law prohibits recovery of attorney's fees unless authorized by statute or contract.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006).  Generally, a trial court's award of attorney's fees is reviewed for an abuse of discretion.

---

[10] Vtex and Bui asserted in their summary-judgment motion that the only obligations they owed Trinh are those listed in section 1101.561 of the Texas Occupations Code.  *See* Tex. Occ. Code § 1101.561(a) (stating that duties of license holder acting as an intermediary broker supersede duties of license holder established "under any other law, including the common law"); *id.* § 1101.561(d) (detailing duties of intermediary brokers).  Trinh has neither identified these duties in his brief, nor explained how Bui or Vtex violated any of these duties.

16

*Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex. 1998); *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990).

## B.     Trinh's Challenges

Here, Trinh's challenges to the attorney's fees are as follows.  First, he asserts that there were no counterclaims for breach of contract or proper pleadings to support an award of attorney's fees to Bui or Vtex.  Next, he argues that attorney's fees were improper because Bui and Vtex were not parties to the earnest money contract.  Trinh claims that the Lotus Congregation was not entitled to attorney's fees because Seafood Pier, not the Lotus Congregation, was the party with whom Trinh entered into the second earnest money contract; Seafood Pier and Trinh "set up and conned" Trinh into entering the earnest money contract, and thus the Lotus Congregation has "unclean hands."  Trinh further contends that attorney's fees were improper because these appellees failed to segregate their fees between recoverable and unrecoverable claims.  Finally, Trinh alleges that the fees awarded to the appellees do not meet the *Andersen* factors.[11]

These challenges can be broadly grouped into (1) the propriety of the award of fees; and (2) segregation of the fees.  We address the sub-issues under each of these broader issues in turn.

## C.     The Propriety of Attorney's Fees

### 1.  *Bui and Vtex*

Trinh asserts that Bui and Vtex were not entitled to attorney's fees because (a) no pleadings support the award and (b) they were not parties to the earnest money contract in which the "prevailing party" provision is contained—*i.e.*, the earnest money contract between the Sangha Congregation and Trinh.

Trinh's first two arguments are premised on the trial court's oral statement that the only basis for the award of attorney's fees is the "prevailing party provision in the

---

[11] *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

17

Earnest Money Contract." Regarding his first argument, Bui and Vtex did not seek attorney's fees under a contract in their answer.[12] However, we have no record of any hearing on attorney's fees;[13] thus we must presume that the issue of attorney's fees under the earnest money contract was tried by consent. *See* Tex. R. Civ. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *see also Good v. Baker*, 339 S.W.3d 260, 266 (Tex. App.—Texarkana 2011, pet. denied) ("[T]o be entitled to an award of attorneys' fees . . . , [the defendants] were required to file an affirmative pleading requesting them, unless the issue was waived *or tried by consent*." (emphasis added)). Accordingly, we overrule this issue.

---

[12] Trinh asserts in his brief that "[t]he absence of pleadings was pointed out to the trial court." The record reference he provides to support this statement, found in his response to the appellees' motions for reconsideration of the trial court's initial order denying attorney's fees, contains the following excerpt regarding pleadings:

> Some or all Defendants' Motions argue that "all that was required was that Defendants affirmatively plead for the recovery of .attorney's fees." Defendants confuse satisfying one prerequisite with satisfying all prerequisites. There are other prerequisites that Defendants must establish, including but not limited to establishing that Defendants were entitled to attorney's fees, that the contract provided for the recovery of attorney fees in this situation, and that the attorney fees were reasonable and necessary.

This excerpt does not inform the trial court that Bui and Vtex did not have pleadings to support their request for attorney's fees under the earnest money contract. The other record reference Trinh provides is even less availing: there is no reference to a lack of pleading support whatsoever on that page.

Finally, Trinh directs us to a page in the record that is "a chart for the trial court showing what pleadings and evidence was in the record for each defendant." This chart is attached to Trinh's motion for new trial and reconsideration filed on June 24, 2011. It does not clearly notify the trial court that there are no pleadings to support Bui and Vtex's claim for attorney's fees. Moreover, at the hearing on Trinh's motion for new trial, Trinh made no mention of the alleged lack of pleading support for the award of attorney's fees to them. Thus, it is not apparent that Trinh preserved this issue for appeal. *See* Tex. R. App. P. 33.1(a).

[13] It is unclear from our record whether a hearing on attorney's fees was held. The trial court initially denied the parties' motions for attorney's fees. The Sangha and Lotus Congregations and Bui and Vtex filed motions for reconsideration of this denial. Trinh opposed the reconsideration. The trial court signed similar orders granting the Sangha and Lotus Congregation's motion and Bui and Vtex's motion and awarding them attorney's fees. In each of these orders, the Court stated it considered the parties' motions for reconsideration and further stated, "After considering the Motion[s], the Response and *the arguments of the parties* the Court GRANTS the Motion[s]." (emphasis added).

Turning to Trinh's issue regarding Vtex and Bui's status as parties to the earnest money contract with the Sangha Congregation, we agree that they were not parties to this contract. But a court's primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Contract terms are given their plain, ordinary, and generally accepted meanings, and contracts are to be construed as a whole in an effort to harmonize and give effect to all provisions of the contract. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.2005).

Trinh relies on *Lesieur v. Fryar*, a case from the San Antonio Court of Appeals, to support his position that Vtex and Bui were not entitled to attorney's fees because they were not parties to the earnest money contract. 325 S.W.3d 242, 251–253 (Tex. App.—San Antonio 2010, pet. denied). However, in that case, the prevailing parties provision stated, "The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all cost of such proceeding incurred by the prevailing party." *Id.* at 251. The term "party" was defined by the contract as only the buyer and seller. *Id.* at 252.

Here, however, the contract states, "If Buyer, Seller, any broker, or any escrow agent is a prevailing party in any legal proceeding brought under or with relation to this contract or this transaction, such party is entitled to recover from the non-prevailing parties all costs of such proceeding and reasonable attorney's fees." The contractual attorney's fee provision applies to any "buyer," "seller," "broker," or "escrow agent." Bui and Vtex were brokers. Thus, on its face, the attorney's fees provision applies to them. *See Fitzgerald v. Schroeder Ventures II, LLC*, 345 S.W.3d 624, 630 (Tex. App.—San Antonio 2011, no pet.) (concluding that a broker was entitled to attorney's fees under identical provision in an earnest money contract). Accordingly, based on the plain language of the contract, Vtex and Bui were entitled to attorney's fees, and we overrule this issue.

19

## 2. *The* Andersen *Factors*

Trinh asserts that the trial court abused its discretion in awarding attorney's fees, citing the disparity between the fees awarded to Bui and Vtex ($39,127.59, plus appellate fees) and the Congregations ($60,266.33, plus appellate fees). Trinh contends,

> There is no apparent rhyme or reason for the difference. Mr. Trinh questioned their reasonableness and necessity in his response, even before the fees were granted by the trial court. He invoked the *Andersen* case and walked through the factors, and objected to the conclusory testimony and the lack of information in the affidavits and the one invoice.

(record citations omitted). Trinh neither lists the *Andersen* factors nor provides any analysis in his brief regarding them.[14] *See* Tex. R. App. P. 38.1(i). Rather, Trinh simply asserts, "The thin conclusory evidence in this case supporting over $100,000 in fees is a perfect example of why" a trial court must have evidence to support its award.

Bui and Vtex attached an affidavit from their counsel explaining as follows:

> It was necessary for Lang Van Bui and Vtex Realty to retain an attorney to represent them in this matter. It was necessary for him to retain an attorney familiar with commercial real estate transactions and with real estate litigation because this lawsuit involves complex real estate issues involving both statutory and common law. In particular, the issues concerning the fiduciary duties of an intermediary broker are somewhat novel. . . . The novelty and difficulty of the questions involved in this case required me to spend 117.44 hours defending this lawsuit (1) investigating claims; (2) drafting pleadings, questions, and responses; (3) engaging in discovery; (4) attending hearings; and (5) preparing a motion for summary judgment. (Daniel Frayne of this office spent 22.34 hours; Barry Hammond spent 4.1 hours; and Xerxes Patel spent .43 hours.) . . . . In addition, since the law suit had already been set for trial, I had already begun to work on trial preparation, including discussion with our expert witness and preparation of a motion in limine. The attorney services and fees charged in this case were necessary, were reasonable, and were incurred in the defense of this suit.

---

[14] We presume that Trinh is referring to *Arthur Andersen & Co. v. Perry Equipment Co.*, the seminal case on the reasonableness of attorney's fees. 945 S.W.2d at 818.

The trial court's orders granting attorney's fees to Bui and Vtex provides that the sum granted to these appellees is

> reasonable and necessary in light of the (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (describing the above-listed factors as those a court must consider when reviewing the reasonableness of an award of attorney's fees).

Attached to their motion for attorney's fees, the Sangha and Lotus Congregations provided an affidavit from one of their attorneys identifying the attorneys who worked on the case, their experience, and setting forth the above-stated *Andersen* factors. An invoice reflecting the hours these attorneys had billed, identifying the projects on which they had worked, as well as expenses incurred on depositions and translators, was attached to the affidavit.

The affidavits and order described above adequately address the *Andersen* factors. Without any explanation from Trinh regarding how the evidence does not meet the *Andersen* factors, we cannot say the trial court abused its discretion in awarding the fees it did to the Sangha and Lotus Congregations and Bui and Vtex. We therefore overrule this issue.

### 3.  *The Lotus Congregation's "Unclean Hands"*

Trinh asserts that, "[u]nder the doctrine of unclean hands, [the Lotus Congregation] should not be entitled to get attorney's fees under a contract it didn't negotiate, didn't sign, but which it procured through artifice and deceit." However, Trinh

21

never presented this argument to the trial court in any fashion. He did not mention this "doctrine" in his response to the Lotus Congregation's initial motion for attorney's fees, his response to the Lotus Congregation's motion to reconsider the trial court's order denying attorney's fees, or his motion for new trial. Accordingly, he has failed to preserve this issue for our review. *See* Tex. R. App. P. 33.1(a). We thus overrule this issue.

## D.    Segregation of Fees

Finally, Trinh asserts that the attorney's fees awards must be reversed because the parties failed to segregate their fees between recoverable and unrecoverable claims. Ordinarily, those seeking attorney's fees must segregate fees between claims for which they are recoverable and claims for which they are not. *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 311.

However, according to the plain language of the earnest money contract, the attorney's fees provision applies to "any legal proceeding brought *under or with relation to this contract or this transaction*." (emphasis added). The claims in this case, including Trinh's tort claims, all arose from the original transaction. Trinh's tort claims involve allegations that all of the parties, including Bui, Vtex, the Sangha Congregation, and the Lotus Congregation, engaged in a conspiracy to cheat him out of his property and cause him to sell it for less than it was worth. All of his tort claims are related to the aborted transaction with the Sangha Congregation. And the attorney's fees provision in this contract is broad enough to encompass all of Trinh's claims. *See Fitzgerald*, 345 S.W.3d at 629–30 (concluding that same attorney's fee provision in earnest money contract was broad enough to apply to tort claims); *Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2002, no pet) (holding lawsuit was "brought under or with respect to the transaction" when suit was brought to rescind contract based on an alleged misrepresentation in the transaction). Accordingly, we overrule Trinh's segregation complaint.

**CONCLUSION**

We have overruled Trinh's issues relating to the trial court's summary judgments in favor of appellees. We have further determined that Trinh's issues regarding the attorney's fees awards to the Sangha Congregation, the Lotus Congregation, Bui, and Vtex are without merit. We therefore affirm the trial court's judgment, including its award of attorney's fees to these appellees.


/s/    Adele Hedges
        Chief Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.